NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

BROOKS H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, Z.H., *Appellees*.

No. 1 CA-JV 21-0255
FILED 1-18-2022

---

Appeal from the Superior Court in Maricopa County
No. JD34569
The Honorable David O. Cunanan, Judge

**AFFIRMED**

---

COUNSEL

Law Office of Edward D. Johnson, Peoria
By Edward D. Johnson
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By James W. Rappaport
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Angela K. Paton joined.

---

**T H U M M A**, Judge:

**¶1**        Brooks H. (Father) appeals from an order terminating his parental right to his son, Z.H., based on 15-months time-in-care. Because Father has shown no error, the order is affirmed.

## FACTS[1] AND PROCEDURAL HISTORY

**¶2**        Father and Mother[2] are the biological parents of Z.H., born in 2012. Before July 2018, the Arizona Department of Child Services (DCS) had received reports about Mother's mistreatment of her children, including Z.H. By that time, Father, his significant other and Z.H. had moved to Texas. In July 2018, Texas police responded to reports that Z.H. was being beaten by Father's significant other. The Texas Department of Family and Protective Services removed Z.H. from Father's care and a medical examination revealed injuries consistent with abuse. Texas then took custody of Z.H. and, by November 2018, he was placed in a kinship placement in Arizona.

**¶3**        In March 2019, the Texas and Arizona courts found jurisdiction was proper in Arizona. The case was then transferred to the Arizona Superior Court in Maricopa County and DCS filed a dependency petition. In July 2019, Z.H. was found dependent as to Father, when he did not contest the allegations, and the court adopted a family reunification case plan. DCS offered Father various reunification services, including visitation, parent aide services, urinalysis and hair follicle testing, housing resources, counseling services, case aides and psychiatric services,

---

[1] This court views the evidence in a light most favorable to sustaining the superior court's findings. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207 ¶ 2 (App. 2008).

[2] Although Mother's parental rights have been terminated, she is not a party to this appeal.

including an evaluation. Given a concern about lack of progress, in November 2019, the court adopted a concurrent case plan of severance and adoption.

¶4        In 2019 and 2020, Father sporadically participated in some services, but was closed out of many for lack of participation. Father's visits were inconsistent, and he did not successfully complete parent aide services. Although testing positive for marijuana, Father had a medical marijuana card and substance abuse was not considered a barrier to reunification.

¶5        In 2020, Father completed a psychological evaluation in which the psychologist recommended a psychiatric evaluation as well as anger management, parenting and other classes. Father's reaction to the proposed evaluation was that DCS was creating more "hoops" for him to jump through. Father's lack of consistency with visits was reported to have a negative influence on Z.H., who needed support and "redirection" after one canceled visit in particular. As a result, DCS placed Father on a "call to confirm" list for visits. When Z.H. said he did not want to have any more visits, DCS suspended visits until Father could show more consistency.

¶6        In 2021, Father appeared to engage in some services, but remained inconsistent with visits. From January through March 2021, Father completed five of eleven scheduled visits. And during visits, Father did not stay for the entire time allocated. During this same time, his participation in parenting skills sessions also was sporadic, with Father participating in five of twelve sessions. Father's excuses for this lack of participation included oversleeping, traffic, securing an apartment, having no money and just not showing up.

¶7        At DCS' request, the court changed the case plan to severance and adoption in April 2021. Later that month, DCS moved to terminate Father's parental rights, alleging 15-months time-in care. DCS alleged that Father had not addressed his substance abuse or anger management issues through counseling and his inconsistent participation in services showed his failure to make the necessary behavioral changes.

¶8        At a contested severance hearing (as to Father) in July 2021, where a DCS specialist and Father testified, the court received exhibits and heard argument. At the end of the hearing, the court found DCS had met its burden of proof and granted the motion, terminating Father's parental rights to Z.H. By that time, Z.H. had been in care for more than three years. This court has jurisdiction over Father's timely appeal pursuant to Article

6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) §§ 8-253(A), 12-120.21(A) and 12-2101(A) and Ariz. R.P. Juv. Ct. 103-104 (2022).[3]

## DISCUSSION

**¶9**      As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground set forth in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of the witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights if it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

## I.      The Superior Court's Time-in-Care Finding Is Supported by Clear and Convincing Evidence.

**¶10**      Father argues DCS did not make the required showing to terminate his parental rights based on 15 months time-in-care. To terminate parental rights on that statutory ground, DCS had to prove by clear and convincing evidence that Z.H. had been in an out-of-home placement under court supervision for a cumulative total of 15 months or longer; that DCS had made a diligent effort to provide appropriate reunification services; that Father had been unable to remedy the circumstances that caused Z.H. to be in the out-of-home placement and that there was a substantial likelihood that Father would not be capable of exercising proper and effective parental care and control in the near future. *See* A.R.S. § 8-533(B)(8)(c).

**¶11**      On appeal, Father's challenge to the finding that DCS proved this statutory ground is that (1) DCS did not make made diligent efforts to provide appropriate reunification services and (2) the court erred in finding he had not remedied the circumstances that caused Z.H. to be taken into custody. Father argues that he did not receive assistance from DCS, that he found his own parenting class and that DCS would not put in another

---

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

referral for him "even though the current parent aide felt that father was making progress and that another referral would be beneficial."

¶12            "The purpose of providing reunification services is to afford a parent 'the time and opportunity to participate in programs designed to improve the parent's ability to care for the child.' Such efforts also enable [DCS] to evaluate a parent's progress, or lack thereof, toward making reunification possible." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 96 ¶ 31 (App. 2009) (citation omitted). DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). Rather, DCS is only obligated to provide services that have "a reasonable prospect of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192 ¶ 34 (App. 1999).

¶13            At trial, the DCS specialist testified that Father was offered visitation, parent aide, hair follicle and urinalysis testing, a psychiatric evaluation and case aides. While Father completed one parent aide referral in 2020, he needed another referral to succeed, which he claims he was denied. Father also claimed that he completed parenting classes and has attended counseling since March 2021.

¶14            The DCS specialist testified that Father did not consistently participate in visits, including a period where Father did not see Z.H. for seven months. Later in the case (January through March 2021), Father participated in just five of eleven offered visits with Z.H., none of which he attended the full time, and just five of twelve parenting skill sessions. This record supports a finding that Father's failure to participate in services offered (not DCS' failure to provide proper services) prevented reunification. Father has not shown that DCS needed to provide more or different services to discharge its obligations, or that providing more or different services would produce a more successful outcome. Thus, Father has not shown that DCS failed to make a diligent effort to provide appropriate reunification services.

¶15            Father also argues that the superior court did not have reasonable evidence that he was unable to remedy the circumstances that brought Z.H. into DCS' custody. The extended period that Z.H. was in an out-of-home placement gave Father an ample opportunity to remedy those circumstances. While noting that in the four months before the trial Father had shown improvement, the superior court found "[t]here were warning signs regarding Father's ability to parent in the foreseeable future which included his inconsistency in services including visits. Father has not fully

engaged in services or been consistent in visitations with [Z.H.]. He's failed to make the behavioral changes throughout the case."

¶16        Father challenges the DCS specialist's testimony, arguing that he had secured housing, completed a parenting class and was working two jobs to meet Z.H.'s needs. Father also argues that even though he "did not 'successfully' complete his parent aide service," he "gained valuable insight" which beneficially impacted his parenting abilities. At trial, however, the DCS specialist testified that Father had not made the required progress to remedy the circumstances that caused Z.H. to be taken into care. She testified that she did not think Father had made his child a "priority" because of his inconsistency with visits, his failure to protect his child from previous abuse and his failure to recognize abuse and assess appropriate caregivers. She also testified that Z.H. needed permanency, stability and a reliable caregiver and she did not feel as though Father had made the changes necessary to reunify. On this record, Father has not shown that the court erred in considering this evidence and concluding DCS had met its burden to show the 15-months time-in-care statutory ground.

## II.        The Superior Court's Best Interests Finding Is Supported by a Preponderance of the Evidence.

¶17        Father argues the court erred in finding that termination was in Z.H.'s best interests. "Termination is in the child's best interest if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018). Father argues he was bonded with Z.H., who hugs and kisses him every time he sees him, has daily phone calls with Z.H. and that Z.H.'s placement is not in the child's best interests.[4]

¶18        The court considered the trial evidence, including the bond Father had with Z.H. Having weighed and assessed that evidence, the court found that "the permanency of the child weighs in favor of terminating at this time. I don't doubt that [Father] loves that child, and would like to care for that child, but the short version is that he has a lot going on." The court also found that, although "not technically in an adoptable placement now, testimony was that he is an otherwise adoptable child and other permanency options have been provided" for Z.H. The court also concluded that termination would benefit Z.H. by furthering the plan of

---

[4] At the time of trial, DCS had found an adoptive placement for Z.H., although the record shows that the placement disrupted after trial, with Z.H. being placed in a group home.

adoption and providing him permanency and stability. On this record, Father has not shown that the court erred in finding that termination of parental rights was in the best interests of Z.H. *See Alma S.*, 245 Ariz. at 150 ¶ 13.

## CONCLUSION

**¶19**         The order terminating Brooks H.'s parental rights to Z.H. is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AA